### Jeffrey Company v. Lockridge.

(Decided January 19, 1917.)

Appeal from Fulton Circuit Court.

1. Principal and Agent—Nature of Relation in General.—An agent
   is one who acts for or in the place of another, by authority from
   him, or who undertakes to transact some business or manage some
   affairs for another, by authority from him and to render an account
   of it.
2. Appearance—Proceedings Constituting Appearance.—Although a
   court is without jurisdiction of the person of a litigant, if it has
   jurisdiction of the subject matter, and the litigant appeals from
   the judgment of the court to the Court of Appeals, he thereby
   enters his appearance to the action, and when the judgment is re-
   versed and remanded he will be before the court below for all the
   purposes of the action.

HERSCHEL T. SMITH and FREDERICK TAYLOR for appellant.

W. J. WEBB for appellee.

Opinion of the Court by Judge Hurt—Reversing.

On the 30th day of June, 1914, the appellee, W. S.
Lockridge, filed his petition in the Fulton circuit court
against the appellant, the Thomas B. Jeffrey Company,
in which he set out a claim, that, the appellant had in
February, 1914, sold to him an automobile of the 1913,
Cross Country model, which it represented to be a re-
built car and substantially as good as new, but which
had turned out to be worthless, and not such car as was
represented to him by the appellant, and he sought the
recovery of damages against the appellant for such
violations of its contract as were alleged in the petition.
Summons was issued and served on the day of the fil-
ing of the petition on I. H. Read, who the return
stated was the agent of the appellant.   The appellant is
a corporation engaged in the manufacture and sale of
automobiles and supplies for machines of its manufac-
ture, at Kenosha, Wisconsin.

At the proper time, the appellant appeared in court for the purpose, only, of moving the court to quash the return upon the summons, which had been issued upon the petition. The return was as follows:

"Executed June 30th, 1914, by handing a true copy of this summons to I. H. Read, agent Thomas B. Jeffrey Co.

"BAILEY HUDDLESTON, S. F. C."

The ground upon which it was sought to have the return upon the summons quashed was, that Read, to whom a copy of it was delivered, was not the agent of appellant, and never had been, at any time, its agent. The court overruled the motion to quash the summons, to which the appellant excepted. The case then proceeded to trial and resulted in a verdict of the jury and judgment of the court in favor of the appellee, for the sum of $865.00 in damages. Grounds for a new trial were filed and motion made to that effect in proper time, but were overruled and appellant has appealed from the judgment to this court.

Naturally the first subject for consideration, upon the appeal, is to determine, whether the court below was in error in overruling the motion to quash the return upon the summons. If Read was not such an agent as upon whom a summons might be served, the court, while having jurisdiction of the subject matter of the controversy, did not have jurisdiction of the appellant, and the proceedings against it were erroneous. Upon the hearing of the motion to quash the return on the summons, several affidavits were filed and, also, oral testimony heard, all of which was duly preserved and brought before us in the bill of exceptions. I. H. Read, the alleged agent, states in an affidavit, that he was not at the time of the service of the summons an agent of the appellant; that he never was an agent of the appellant and never at any time held himself out as such agent, and that the only dealings, which he ever had with the appellant, was, that in the year 1912, he bought some merchandise from the appellant and paid it therefor; that since November, 1912, he has not bought an automobile or any other thing from the appellant, and that such automobiles of the appellant's make, as he has since that time bought and sold, he bought from the Prince Wells Co., at Louisville, Ky., and paid it therefor; and that the only dealings, that he had had with the Prince Wells Co.

were to buy machines from it, outright, that had been made by the Thomas B. Jeffrey Co., and paid the Prince Wells Co. therefor. The affidavits of H. C. Hill, the assistant sales manager of appellant, and of E. J. Jordan, the secretary and sales manager of appellant, and of George H. Eddy, treasurer of appellant, were filed, and each of them states, that Read was not at the time of the service of the summons upon him, nor had he ever been, either before or since that time, an agent of appellant; that he was never employed by appellant to do any kind of business for it or to act in any respect as its agent, nor to represent it in any matter or any transaction whatsoever, and that the appellant had never, by any act or word, held out Read to the public as an agent or representative of it, and that the only dealing or transaction it had ever had with Read was prior to the month of November, 1912, when it sold to him certain automobiles and equipment in his own name and for his own account, and for which goods he had paid the appellant, and that since November, 1912, the appellant has not had any business dealings or relations of any kind whatsoever with the said Read, and that Read has had, at no time, any property or goods, under his control or held by him for sale or distribution or otherwise, which was the property of the appellant. I. H. Read was called and gave parol evidence, also, upon the hearing on the motion. The substance of his testimony was, that he had no connection nor employment nor business association with the appellant; that such cars of appellant's make, as he sold in Fulton county, in the years 1913 and 1914, he bought outright from the Prince Wells Co., at Louisville, Ky., and paid it therefor; that he had a contract with the Prince Wells Co., which gave him the right to sell the cars of appellant's manufacture in the county of Fulton; that he had not ordered to be shipped to him, by the appellant, any car or any other thing connected with its business during the years 1913 and 1914; that all such things he purchased from the Prince Wells Co., but the relations which existed between the Prince Wells Co. and the appellant, he did not know, but it was an agent; that during the year 1914, he had sold eight cars to persons in Fulton county and surrounding territory, all of which he had bought from the Prince Wells Co.; that a portion of them were shipped to him from the manufacturer, at Kenosha, Wisconsin; that all came with a bill of lading with draft attached, which he paid,

before the cars were delivered to him; that he, also, bought supplies from the Prince Wells Co., which he kept in a garage and when these supplies were sold that he and the keeper of the garage divided the profits; that when he received cars and paid the draft attached to bill of lading, he did not remember to whom the drafts were made payable; thought he had paid drafts to both the Thomas Jeffrey Co. and to Prince Wells Co. The testimony of other witnesses only related to the fact, that they had bought cars of the appellant's make from Read and paid him for same, except W. A. Johnson states that he bought a car of the Jeffrey make from Read, as the agent of the Jeffrey Company, but it is evident from the other evidence in the case that it was a mere conclusion, on Johnson's part, that Read was an agent of the appellant. While the evidence entirely fails to show what relations existed between the Prince Wells Co., of Louisville, and the appellant, the contract in writing between Read and the Prince Wells Co. was put in evidence. In this writing, the Prince Wells Co. is called the distributor, while Read is denominated, a dealer. The writing provides that the agreement expressed in it shall remain in force from November 3rd, 1913, to July 31st, 1914, and that during the life of the agreement the distributor gives to the dealer the right to sell such motor cars as are manufactured by the appellant, in Fulton county, Kentucky, and in Weakly and Obion counties, Tennessee, and agrees to sell and deliver to the dealer f. o. b. cars at Kenosha, Wisconsin, such cars as he may desire to purchase of appellant's manufacture and to refer to the dealer all inquiries for motor cars received from the territory mentioned in the contract. The dealer is to deposit with the distributor one hundred and fifty dollars to guarantee the fulfillment on his part of the terms of the contract. The dealer, upon his part, agrees to pay for the motor cars purchased by him under the contract by sight draft, with bill of lading attached, and to pay in cash for all parts of machines ordered during each month at a date not later than the 25th day of the succeeding month, and that the distributor may at any time apply the deposit, made by him for the performance of the contract, to the payment of any indebtedness, which the dealer may owe the distributor. The distributor agrees to give to the dealer, in the sale of cars to him, twenty per cent. discount from the list prices of the cars, and to sell and bill the cars to

the dealer at prices, which are stated in the writing, and to, also, give the dealer a discount of twenty per cent. on supplies for cars ordered by him. The dealer agrees to judiciously advertise the appellant's make of car, and not to directly or indirectly make any sale of such cars in any territory other than specified in the contract, and to refer to the distributor all inquiries for the appellant's make of car, which he might receive from other territory, and for cars not embraced in the contract, and to give to the distributor each month a list of the names and addresses of the persons to whom he sold cars, and to keep in stock at least one touring car of appellant's make for exhibition purposes. The contract further provided, that all motor cars and parts alleged to be defective must be returned, with transportation charges prepaid, to the manufacturer for examination and inspection, before any allowances will be made, and that all claims for allowances, and for allowances with respect to shipment of parts must be made within ten days after the dealer should receive such parts, and that no claim should be made on the manufacturer for defects in any car or its equipment, other than as provided in the guarantee printed in the manufacturer's catalogue. The dealer, also, agrees that he will not hold the distributor liable for any delay in filling orders placed for motor cars, arising from causes beyond the control of the distributor and manufacturer, and that the responsibility of the distributor for any loss or damage to motor cars or other goods sold under the contract shall cease upon delivery thereof to the railroad, express company or other common carrier, or to the dealer's representative. A further provision in the agreement was, that the dealer was not in any manner authorized to conduct business in the name or for the account of the distributor or manufacturer, nor in the name of either, nor in behalf of either to enter into any contract or bill goods to third persons, nor in the name of either to make any promises or representations relative to the manufacturer's goods, other than such as are contained in the guaranty in the catalogue issued by the manufacturer. It is, further, provided, that the agreement was not assignable by the dealer, until the distributor had first agreed in writing thereunto, and that either party might terminate the contract at any time after its conditions have been fulfilled by the other party, by written notice, giving the reasons for it, and the distributor reserves

the right to cancel the agreement at any time, if the dealer shall not have purchased one Jeffrey or Rambler motor car by February 15th, 1914.

It is impossible to conceive in what way that Read could be an agent of the appellant, as there were no relations of a business character existing between them. He did not represent appellant about anything, was not authorized to transact any business for it, neither could he make any contract for it, nor in its name. Neither does it appear that appellant had any knowledge of Read or of his operations. He did not pretend to be an agent or representative of appellant, or authorized to do any kind of business for it. He had no contract of any kind with appellant. He obtained cars and supplies of appellant's make by paying for them, upon delivery, and when he obtained them, he could do nothing with them, which any other person was not privileged to do in the same territory, who might buy an automobile of the appellant's making. Having no authority to act for appellant or in its behalf, he was not responsible to nor owed any account to appellant for any act of his. So far as appellant was concerned, he was perfectly free to do with the cars and supplies purchased by him from the Prince Wells Co. as he chose. The title of the property passed to him, when it was delivered to him, or put in the custody of a common carrier, consigned to him. The distributor, with whom he had his contract, had no control over the property after he received it. The persons, who purchased from him, owed the price to him and not to appellant, and he was free to sell for such price, as he chose or not to sell at all. The appellant was without power to terminate the contract under which he was working, and evidently the business in which he was engaged was his own, and not that of appellant. It might be insisted that the Prince Wells Co., of Louisville, Ky., was the general agent of appellant, with authority to appoint sub-agents for appellant, but there is nothing in the record from which a conclusion can be drawn, that the Prince Wells Co. is an agent of any kind for appellant, and there is no pretense that it has any authority to appoint sub-agents. However, the terms of the contract between Read and Prince Wells Co. are not such as make him an agent of the appellant, even conceding that the Prince Wells Co. had authority to appoint agents for appellant, and had attempted to do so, which it did not. Read was simply a buyer at a price agreed upon, and

selling not for any one except himself. In the conduct of his business, he was wholly independent of any one; he was without authority to even bind the Prince Wells Co., and was without responsibility to any one, except for the price of the cars and supplies, and to give the names of those purchasing from him to the Prince Wells Co., if he made any sales. In 2 Corpus Juris, 420, it is said:

"An agent is defined to be one who acts for·or in the place of another, by authority from him; one who undertakes to transact some business or manage some affairs for another by authority and on account of the latter, and to render an account of it."

When this rule is applied to the facts of the instant case, it appears at once, that Read was not an agent of appellant.

In Barnes v. Maxwell Motor Corporation, 172 Ky. 410, a question somewhat similar to the question in this case arose. The summons was served upon Carson, who was alleged to be an agent of the Maxwell Corporation. Carson had a contract with the corporation, which gave him the exclusive right to sell its automobiles in Ohio county, and provided, that if the corporation itself, sold repairs or machines to parties in that territory, Carson should be paid a commission on the same. The title to the machines furnished under the agreement remained in the corporation until paid for, but Carson was required to pay the taxes. The cost of advertising the business was divided between the parties, and the amount of the cost of advertising fixed. Carson was required to make weekly reports of the property sold and that on hand, and to keep on hand and to exhibit certain specified articles. He was required to secure sub-dealers, who should be satisfactory to the corporation, and whose contracts should be on the forms prepared by it and subject to its approval. Upon the termination of the contract, the corporation reserved the right to take back at invoice prices, parts or automobiles, which Carson owned or had on hand. Either party had the right to cancel any portion of the orders for machines or parts or the entire contract by giving notice to the other party in writing. Each purchaser from Carson was given the standard warranty of the National Automobile Chamber of Commerce. The machines and parts were to be billed to Carson, with certain percentages off of the list prices, and for which payment was to be made in cash, in advance, or sight draft against

the bill of lading, and on the Maxwell parts and purchases of parts for obsolete models, Carson was allowed a discount of twenty per cent. He was allowed a cash discount of ten per cent. from the net price of all repairs purchased by him, provided the payment was made in cash on or before the 20th of the month following the shipment, and all invoices on the repairs were due thirty days after date of shipment. The court held, that under this contract Carson was engaged in a business of his own, and was in no respect an agent of the Maxwell Corporation.

For the reasons indicated, the court was in error in overruling the motion to quash the return upon the summons, and hence, the proceedings thereafter and the judgment appealed from were erroneous. Although, under repeated decisions of this court, the appellant, by praying an appeal to this court, thereby enters its appearance to the action, when the case returns to the court below, it will be before the court for all the purposes of the action. Pendleton v. Pendleton, 112 S. W. 674; Asher v. Cornett, 113 S. W. 131; Foster-Milburn Co. v. Chinn, 137 Ky. 834; Job Iron & Steel Co. v. Clarke, 150 Ky. 246; Southern C. & C. Co. v. Bowling Green Coal Co., 161 Ky. 477; Grace v. Taylor, 1 Bibb. 430. The remaining questions presented in the record are not determined, because the court had not jurisdiction of the appellant, and it will be properly before the court below, only after the return of this cause to that court.

The judgment is, therefore, reversed, and the cause remanded with directions to set aside the judgment and for other proper proceedings.